O

# United States District Court
# Central District of California

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Plaintiff-in-Interpleader,<br><br>v.<br><br>KRISTINA TRUJILLO, ALEC TRUJILLO, TERA TRUJILLO, and MICHELE TRUJILLO,<br><br>Defendants-in-Interpleader. | Case № 2:18-CV-09577-ODW (JPRx)<br><br>**ORDER GRANTING MICHELE TRUJILLO'S MOTION FOR SUMMARY JUDGMENT [59]** |

## I. INTRODUCTION

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendant-in-Interpleader Michele Trujillo.[1]  (Mot. Summ. J. ("Mot."), ECF No. 59.)  The Motion was fully briefed as of January 27, 2020.  (Kristina Trujillo's Opp'n to Mot. ("Opp'n"), ECF No. 63; Reply in Supp. of Mot., ECF No. 65.)[2]  The Court initially denied the Motion because Michele failed to authenticate critical evidence.  (Order Den. Mot. ("MSJ Order"), ECF No. 67.)  Michele then moved the Court to reconsider the MSJ Order, arguing in part that her counsel's authentication errors were excusable neglect.  (Michele's Mot. for Recons. ("Recons. Mot."), ECF No. 70.)

---

[1] As all Defendants-in-Interpleader share the same surname, the Court respectfully refers to their given names.
[2] Only Defendant-in-Interpleader Kristina Trujillo opposed the Motion.

Michele contemporaneously submitted declarations and a request for judicial notice purporting to authenticate the Motion's underlying evidence. (Decl. of Goldy Berger ("Berger Decl."), ECF No. 70-1; Decl. of Michele Trujillo, ECF No. 70-2; Michele's Req. Jud. Notice ("RJN"), ECF No. 71.) Kristina opposed the Reconsideration Motion, and Michele replied. (Kristina's Opp'n to Recons. Mot., ECF No. 73; Reply in Supp. of Recons. Mot., ECF No. 75.) On June 1, 2020, the Court granted the Reconsideration Motion pursuant to the Court's inherent authority and Federal Rule of Civil Procedure 54(b), stating that it would reconsider the Motion in light of evidence now properly before the Court. (Order Granting Recons. Mot. ("Recons. Order"), ECF No. 79.)

Having carefully considered the papers filed in connection with the Motion, the Court deems the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons discussed below, the Court **GRANTS** the Motion. (ECF No. 59.)

## II. BACKGROUND

Michele and Victor Trujillo ("Decedent") were married for seventeen years and had two children together, Alec and Tera. (*See* Mot. 8.) They divorced in 2012. (*See* RJN Ex. 1 ("Dissolution J."), ECF No. 71.) Their Dissolution Judgment, signed by Michele and Decedent as well as the Los Angeles Superior Court of California, required Decedent to maintain a life insurance policy in Michele's favor with a benefit of $400,000. (Dissolution J. ¶¶ 4.5.1–2.) Beginning in August 2016, the required benefit would reduce each year by $25,000 until it reached $300,000. (*Id.* ¶¶ 4.2, 4.5.1.) This obligation was "non-modifiable until [Decedent] retire[d] or the parties commence[d] receiving [Decedent's] retirement payments." (*Id.* ¶¶ 4.5.1–2.)[3]

---

[3] Specifically, the Dissolution Judgment provides:

> As additional (though non-deductible) spousal support, and as security for future spousal support and the [Los Angeles County Employees Retirement Association ("LACERA")] pension, [Decedent] is ordered to maintain in full force and effect his presently existing policy or policies of life insurance or an equivalent policy or policies with a total death benefit of not less than $400,000.00. The total death

The Dissolution Judgment further provides, "Each party is ordered to promptly notify the other in writing when, for any reason set forth in this Judgment, the other's liability for support of any kind or maintenance of any insurance policy or payment of any obligation is terminated or reduced." (*Id.* ¶ 4.9.) The Dissolution Judgment states it is the "final, complete and exclusive Judgment of the parties concerning the subject matters covered[,] and the rights and duties set forth may not be waived, altered, amended, or modified except by an instrument in writing executed by the parties." (*Id.* ¶ 1.12.)

Plaintiff-in-Interpleader Metropolitan Life Insurance Company ("MetLife") issued a life insurance policy to Decedent's employer, the Los Angeles County Sheriff's Department, with an individual certificate to Decedent. (*See* Mot. Ex. A (2011 MetLife Group Variable Universal Life Insurance Policy (the "Policy")), ECF No. 59-1; *see also* Berger Decl. ¶ 5.) On June 5, 2018, shortly before his death, Decedent changed the Policy's beneficiary designation, thereby removing former wife Michele and instead designating his second wife Kristina for 60% of the Policy benefit, his adult son Alec for 20%, and his adult daughter Tera for 20%. (Michele's Statement of Uncontroverted Facts ("SUF") 2, ECF No. 59; Mot. Ex. D ("MetLife Beneficiary Designation Form"), ECF No. 59-1; *see also* Berger Decl. ¶ 8.) Decedent died four days later on June 9, 2018. (SUF 1.)

Upon Decedent's death, a $980,000 benefit on the Policy became payable to the proper beneficiary. (SUF 2; *see generally* Policy.) Kristina, Alec, and Tera claimed their respective portions of the total benefit pursuant to the June 5, 2018 beneficiary

---

> benefit of the policy shall be reduced by $25,000.00 each year once [Decedent]'s spousal support obligation is reduced to zero [on August 1, 2016], however the total death benefit of the policy shall remain at $300,000.00 until such time as [Decedent] retires or the parties commence receiving the retirement payments from LACERA, whichever shall first occur. Once [Decedent] retires and [Michele] is eligible to receive retirement payments from LACERA[,] [Decedent's] obligation to maintain any life insurance shall terminate.

(Dissolution J. ¶¶ 4.2, 4.5.1.)

designation. (*See* Compl. ¶¶ 12, 17, ECF No. 1.) Michele also claimed $350,000 of the total Policy benefit pursuant to the Dissolution Judgment, on the basis that neither of the conditions that would have allowed Decedent to remove her as beneficiary had occurred. (Compl. ¶¶ 16, 18.) In light of the competing claims, MetLife paid Kristina, Alec, and Tera their respective percentages of the *uncontested* $630,000[4] Policy benefit—$378,000 to Kristina (60% of $630,000); $126,000 to Alec (20% of $630,000); and $126,000 to Tera (20% of $630,000). It then initiated this interpleader action against the four Defendants-in-Interpleader Michele, Kristina, Alec, and Tera, regarding disposition of the $350,000 *contested* Policy benefit. (*See* Compl. ¶ 16, 22, 29.)[5]

Kristina asserted Cross-Claims: first, Kristina seeks Declaratory Relief that she is entitled to 60% of the entire policy benefit and that any fees or costs arising from this action must be paid from the remaining 40%; and second, Kristina asserts a claim for Money Had and Received against Alec and Tera, asserting that she is entitled to their portions of the benefit as well, if for any reason this Court finds the June 5, 2018 beneficiary designation invalid. (*See* Kristina's Cross-Claim, ECF No. 19.) No other Defendant-in-Interpleader asserted claims.

Michele moves for summary judgment on the grounds that the undisputed facts establish she is entitled to the contested funds as a matter of law. (*See* Mot.)

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*,

---

[4] $980,000 total Policy benefit – $350,000 contested benefit = $630,000 uncontested benefit.

[5] After MetLife deposited $360,969.86 in contested Policy benefit with the Court, the Court dismissed MetLife from this action. (Financial Entry, ECF No. 51; Order Granting Discharge & Dismissal, ECF No. 62.) The deposited amount constitutes the $350,000 in dispute plus interest accrued at the time of the deposit. (*See* Notice of Deposit, ECF No. 48.)

477 U.S. 317, 322–23 (1986), and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu*, 198 F.3d 1134.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp*, 477 U.S. at 322–23; *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are 'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg. Prods.*, 818 F.2d at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). "[U]ncorroborated and self-serving" testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

IV.     REQUESTS FOR JUDICIAL NOTICE AND OBJECTIONS

Michele asks the Court to take judicial notice of (1) the Dissolution Judgment, and (2) a Stipulated Domestic Relations Order addressing division of Decedent's LACERA benefits ("Stipulated Order"), also issued in the state court divorce proceedings, which the Dissolution Judgment incorporates by reference. (*See* RJN; Dissolution J. ¶ 6.7.2; RJN Ex. 2 ("Stip. Order"), ECF No. 71.) A court may take judicial notice of court filings and other matters of public record. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that a court may take judicial notice of "undisputed matters of public record"); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (taking judicial notice of pleadings, memoranda, and other court filings); *see also United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) (noting judicial notice of proceedings in other courts is proper "if those proceedings have a direct relation to matters at issue."). Because the documents in Michele's RJN fall into the aforementioned categories, the Court **GRANTS** Michele's RJN. The Court does not, however, take judicial notice of reasonably disputed facts in the judicially noticed documents. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

Kristina requests judicial notice of a Notice of Electronic Filing and of Orders in this action. (*See* Kristina's RJNs, ECF Nos. 66-1, 73-5.) The Court **DENIES** Kristina's RJNs because the Notice of Electronic Filing is not relevant to the disposition of the Motion, and the Court need not take judicial notice to consider its own Orders in this matter.

Next, Kristina objects to certain evidence offered by Michele. (Kristina's Evid. Objs., ECF Nos. 63-2, 73-3.) The Court **OVERRULES** all boilerplate objections. (*See* Scheduling and Case Mgmt. Order 8–9, ECF No. 49.) To the extent the Court relies on evidence to which Kristina has objected, the Court **OVERRULES** the relevant objections. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant,

speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."). As to the remaining objections, the Court need not rule on them because it does not rely on the disputed evidence.

## V. DISCUSSION[6]

Michele moves for summary judgment on the ground that she is entitled to the contested funds pursuant to the Dissolution Judgment. (*See generally* Mot.) She argues the Dissolution Judgment obligated Decedent to maintain a life insurance policy in her favor until (1) he retired or (2) both Decedent and Michele began receiving his LACERA retirement payments—neither of which occurred before Decedent passed—and that the required benefit at the time of Decedent's death was $350,000. (*See* Mot. 25; SUF 7.) Kristina does not appear to dispute that Decedent was required to maintain a life insurance policy in favor of Michele until he retired or that the value of the benefit to Michele at the time of Decedent's death was $350,000. (*See* Opp'n 10; *see also* Kristina's Statement of Genuine Disputes ("SGD") 7, ECF No. 63-4.) Instead, Kristina argues that Decedent *had* retired before his death and that Michele began receiving the retirement payments as of the date of Decedent's death. (*See* Opp'n 12–14, 15–17.) Consequently, according to Kristina, Michele is not entitled to the life insurance benefit, and Kristina recovers 60% of the contested funds per the beneficiary designation. (*See* Opp'n 12–14; SGD 7.)

As discussed below, the undisputed facts and evidence establish that Michele is correct: (A) Decedent was required to maintain a life insurance policy in Michele's favor until (1) he retired or (2) both he and Michele began receiving his retirement payments, and (B) neither terminating event occurred before his death. Therefore, Michele is entitled to the contested proceeds. *See In re Marriage of O'Connell*, 8 Cal.

---

[6] The Court is compelled to note that both Kristina and Michele submit papers that are disorganized, nonsensical, and at times incoherent. Both Kristina and Michele raise facts and arguments irrelevant to the issue at hand and make unsupported requests. Here, the Court focuses on the relevant issue—the proper recipient of the disputed funds—and disregards extraneous matters.

App. 4th 565, 577 (1992) (explaining that a court-ordered beneficiary is entitled to recover insurance proceeds even where the insured ignores the court order); *Wright v. Wright*, 276 Cal. App. 2d 56, 59–61 (1969) (finding that decedent's children and former wife were entitled to recover where the divorce property settlement agreement required decedent to maintain life insurance policies in their favor, but decedent had cashed out and cancelled the policies instead).

## A.     Terms Governing Disbursement of Contested Funds

"Marital settlement agreements incorporated into a dissolution judgment are construed under the statutory rules governing the interpretations of contracts generally." *State Farm Life Ins. Co. v. Brockett*, 737 F. Supp. 2d 1146, 1152 (E.D. Cal. 2010) (quoting *In re Marriage of Iberti*, 55 Cal. App. 4th 1434, 1439 (1997)); *see also In re Verner*, 77 Cal. App. 3d 718, 724 (1978) ("The same rules apply in ascertaining the meaning of a court order or judgment as in ascertaining the meaning of any other writing."). "When the language of the judgment incorporating the marital settlement agreement is clear, explicit, and unequivocal, and there is no ambiguity, the court will enforce the express language." *Brockett*, 737 F. Supp. 2d at 1152 (quoting *In re Marriage of Iberti*, 55 Cal. App. 4th at 1440). "Summary judgment is appropriate when the contract terms are clear and unambiguous, even if the parties disagree as to their meaning." *Id.* (quoting *United States v. King Features Ent.*, 843 F.2d 394, 398 (9th Cir. 1988)).

The Dissolution Judgment plainly required Decedent to maintain a life insurance policy in Michele's name until he retired or both he and Michele began "receiving the retirement payments." (Dissolution J. ¶¶ 4.5.1–4.5.2.) The requisite benefit to Michele at the time of Decedent's death was $350,000. (*See id.* ¶¶ 4.2, 4.5.1; Compl. ¶¶ 16, 22, 29; SUF 7.) The Dissolution Judgment constituted the "final, complete and exclusive Judgment" governing disbursement of the disputed funds and could not be amended "except by an instrument in writing executed by" Decedent and Michele. (Dissolution J. ¶ 1.12.) The Dissolution Judgment also required Decedent

"to promptly notify [Michele] in writing when [his] liability for support of any kind or maintenance of any insurance policy or payment of any obligation [wa]s terminated or reduced." (*Id.* ¶ 4.9.) Kristina does not point to any "instrument in writing executed" by Decedent and Michele that could relieve either parties' obligations under the Dissolution Judgment, nor any mutual agreement that could take precedence over their "final, complete and exclusive" agreement. *Lightbourne v. Printroom Inc.*, 122 F. Supp. 3d 942, 948 (C.D. Cal. 2015) ("Faced with this clear and unambiguous contractual language, its interpretation is a question of law, and [plaintiff's] internal understanding—to the extent it differs—is irrelevant.").

Michele and Kristina both point to text messages and emails, either between Michele and Decedent or among the parties, seemingly to demonstrate Michele and Decedent's intent underlying the Dissolution Judgment. Yet these text messages and emails came after the Dissolution Judgment and many came after Decedent's death. These *subsequent* self-authored text messages and emails do not and cannot aid the Court's interpretation of the Dissolution Judgment's clear terms. (*See, e.g.*, Mot. Exs. I–M, P, ECF No. 59-1); *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014) ("If a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, the words being interpreted in their ordinary and popular sense, provided that the language is clear and explicit, and does not involve an absurdity." (internal quotation marks and citations omitted)); *Wright*, 276 Cal. App. 2d at 59 (rejecting parties' arguments regarding intentions underlying property settlement agreement where those intentions were not expressed in the agreement). Hence, despite the parties' subsequent quarreling and interpretation of its terms, the Dissolution Judgment required Decedent to maintain a life insurance policy for Michele's benefit, valued according to the terms of the Dissolution Judgment, until (1) he retired or (2) both he and Michele began receiving his retirement payments.

### B. Whether A Terminating Condition Occurred

The evidence shows that neither terminating condition occurred. First, Michele submits substantial evidence that Decedent had not retired at the time of his death, including a letter from LACERA verifying that Decedent "passed away in active service" and "did not retire from service before passing away." (*See* Mot. Ex. E ("July 3, 2018 LACERA Letter"), ECF No. 59-1, *see also* Berger Decl. ¶ 9.) Michele also submits a series of pension verification forms from LACERA *to Kristina*—dated December 8, 2018, March 2, 2019, and April 1, 2019, respectively—which list Decedent's "effective date of retirement" as July 1, 2018. (*See* Mot. Ex. G ("Pension Verification Forms"), ECF No. 59-1; *see also* Berger Decl. ¶ 11.)

Although Kristina raises several arguments in response, none contradict Michele's competent evidence that Decedent did not retire before his death. For instance, Kristina points to LACERA records listing Decedent's retirement date as June 9, 2018—*the date of his death*—but whether the retirement date is Decedent's date of death or a subsequent date does not refute that Decedent had not retired *before* his death. Kristina also cites California disability law, Government Code section 31720, to argue Decedent applied for a Disability Retirement Evaluation before he died. (Opp'n 12–14.) But she does not explain how California disability law can contradict that Decedent was in "active service" at the time of his death or how unrealized *eligibility* for retirement based on disability could constitute "retirement" under the Dissolution Judgment. Kristina noting that Decedent "was given Retirement Counseling on 1/16/18" is a similarly disingenuous attempt to introduce a factual dispute where none exists, as retirement counseling in no way establishes that Decedent in fact retired. (Opp'n 14.) Finally, Kristina's testimony that she does not know when Decedent retired does not contradict Michele's competent evidence that Decedent remained in active service at the time of his death. (Opp'n 15 (citing Opp'n Ex. 4 ("Kristina Dep."), ECF No. 63-3).) Accordingly, even

drawing all reasonable inferences in Kristina's favor, there is no genuine dispute that Decedent had not retired at the time of his death.

Second, there is also no evidence to suggest that Michele or Decedent received retirement payments *before* Decedent's death. In fact, Kristina's own documents establish that Michele received retirement payments *retroactive* to the date of Decedent's death. (Opp'n 8 (citing Opp'n Ex. 14 (August 30, 2018 LACERA letter informing Michele of coming retirement payments retroactive to June 10, 2018), ECF No. 63-3); Opp'n 7, 17 (citing Opp'n Ex. 10 ("Michele Interrog. Resp. No. 16") ("I receive approximately $4,800.00 per month, which began at the Decedent's date of death."), ECF No. 63-3).) Kristina tries to avoid summary judgment by arguing that discrepancies exist among LACERA's records regarding Decedent's date of retirement because some list June 9, 2018—the day Decedent passed—while others list July 1, 2018. (Opp'n 7–8.) But as above, whether Decedent's retirement date was his date of death or a date thereafter, no evidence suggests that Michele received retirement payments *before* Decedent's death. Thus, even drawing all reasonable inferences in Kristina's favor, there is no genuine dispute that Michele did not receive the retirement payments before Decedent's death.

In summary, Michele submits evidence that Decedent was in active service at the time of his death and that neither Decedent nor Michele received his retirement benefits before his death. Kristina presents no evidence to the contrary. Accordingly, Michele is entitled to the contested funds under the terms of the Dissolution Judgment.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Michele's Motion for Summary Judgment. (ECF No. 59.) Michele is entitled to the $350,000 contested life insurance policy proceeds and any accumulated interest. Michele is directed to submit a proposed judgment and order addressing the disbursement of the interpleaded funds held by the Clerk of the Court within two weeks of this Order.

**IT IS SO ORDERED.**

October 7, 2020

_____
 **OTIS D. WRIGHT, II
 UNITED STATES DISTRICT JUDGE**